FILED: 4/27/2023 2:45 PM
Vermont Superior Court
Windsor Unit
23-CV-01774

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| WINDSOR UNIT | DOCKET NO. _____ |

**USDC - DVT**
**2:23-cv-79**

| | |
|---|---|
| YINONG YOUNG-XU, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BRIAN SHINER, | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Yinong Young-Xu makes the following Complaint against Defendant Brian Shiner.

## PARTIES

1. Plaintiff resides in North Haverhill, New Hampshire.

2. Defendant is an adult individual residing in Norwich, Vermont.

## JURISDICTION

3. This court has proper jurisdiction pursuant to 4 V.S.A. § 31.

4. Venue is proper in this court pursuant to 12 V.S.A. § 402.

## FACTS

5. Plaintiff is an epidemiologist, statistician, and medical researcher, who works with the Department of Veterans Affairs ("VA").

6. Plaintiff worked at the White River Junction Veterans Affairs Medical Center ("WRJ VAMC") from 2003 to 2023, and had been an appointed "without compensation" researcher on certain research projects from 2018 to 2023.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
P.O. BOX 1307
BURLINGTON, VERMONT 05401

7. Plaintiff has been an assistant professor of research at Dartmouth Medical School ("Dartmouth") since 2008.

8. Plaintiff had been Director of the Clinical Epidemiology Program ("CEP") at the Veterans Education and Research Association of Northern New England, Inc. ("VERANNE") from 2014 to 2023.

9. VERANNE is a non-profit that is part of the Veterans Affairs Non-Profit Corporation's network and performs research and educational services in affiliation with the VA.

10. Plaintiff is a Chinese immigrant to the United States.

11. Defendant is the acting Associate Chief of Staff of Research ("ACOS") at WRJ VAMC, and an associate professor of psychiatry at Dartmouth.

12. Defendant was promoted to his position as ACOS in September 2022.

13. As ACOS, Defendant was Plaintiff's direct supervisor.

14. In 2017, Plaintiff and Defendant were colleagues at WRJ VAMC.

15. In 2017, Maya Aboumrad was a research fellow at WRJ VAMC at the same time.

16. In 2017, Defendant was Ms. Aboumrad's direct supervisor and mentor at WRJ VAMC.

17. In 2017, Defendant was also having an affair with Ms. Aboumrad.

18. Due to complications arising from Defendant's relationship with Ms. Aboumrad, he asked Plaintiff to take over as her mentor.

19. Plaintiff agreed.

20. Plaintiff mentored Ms. Aboumrad for the next four years without incident or complaint.

21. In September 2021, Ms. Aboumrad started graduate school at Johns Hopkins' Bloomberg School of Public Health.

22. In order to qualify for federal loan forgiveness, Ms. Aboumrad remained employed full-time by CEP at VERANNE while attending Johns Hopkins.

23. In December 2021, Plaintiff discovered that Ms. Aboumrad was submitting fraudulent timecards to VERANNE.

24. For example, the timecards would show Ms. Aboumrad as "clocked in" for work with the CEP during class hours at Johns Hopkins.

25. Ms. Aboumrad was also taking every Monday off as a "sick day".

26. Plaintiff raised the issue of the timecards with Ms. Aboumrad and her professors.

27. Ms. Aboumrad refused to change her behavior.

28. After this refusal, Plaintiff reported Ms. Aboumrad's behavior to human resources and his superiors at both VERANNE and WRJ VAMC, as Ms. Aboumrad was working on VA research projects.

29. One day after Plaintiff reported her behavior, Ms. Aboumrad filed a workplace harassment complaint against Plaintiff with WRJ VAMC and VERANNE.

30. The complaint was dismissed shortly afterward.

31. Ms. Aboumrad then filed a sexual harassment complaint against Plaintiff with WRJ VAMC and VERANNE.

32. The complaint was dismissed shortly afterward.

33. Ms. Aboumrad then filed a gender discrimination complaint against Plaintiff with WRJ VAMC and VERANNE.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

34. Although the complaint is unsubstantiated, meritless, and retaliatory, at Defendant's instigation, this investigation remains "open" administratively.

35. On or about December 15, 2015, Plaintiff was suspended from his position as the CEP director by Paul Holtzheimer, then-Chair of the VERANNE Board of Directors, because Plaintiff was "implicated" in workplace complaint investigations.

36. To date, Plaintiff has not had his suspension lifted, despite the dismissals of the complaints against him.

37. During these investigations, Ms. Aboumrad asked Defendant for support.

38. VA investigations are strictly confidential, and individuals involved in those investigations are required to maintain that confidentiality.

39. In February 2022, Plaintiff was being considered for promotion to associate professor at Dartmouth.

40. Defendant is a member of the Dartmouth Medical School Promotion Committee.

41. While the Dartmouth Promotion Committee was considering Plaintiff's promotion, Defendant informed the Committee that Plaintiff was under investigation by WRJ VAMC because of allegations brought by Ms. Aboumrad.

42. By disclosing this to the Committee, Defendant breached the confidentiality of the VA investigation process.

43. Defendant also failed to disclose his history with Ms. Aboumrad and his conflict of interest.

44. As a result of Defendant's breach of confidentiality, Plaintiff's promotion was put on hold indefinitely.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

45. On February 1 and 6, 2023, Plaintiff reported Defendant's violation of confidentiality to the acting Chair of Dartmouth and the Dean of Faculty Development.

46. In September 2022, Defendant was named as acting Associate Chief of Staff of Research (ACOS) at WRJ VAMC.

47. In this position, Defendant was Plaintiff's direct supervisor.

48. As ACOS, Defendant inappropriately tried to take control of WRJ VAMC's Research & Development Committee, which is supposed to operate as an independent body.

49. On December 12, 2022, Plaintiff reported Defendant's mismanagement of the WRJ VAMC research department to WRJ VAMC Chief of Staff Daniel O'Rourke.

50. Upon becoming ACOS, Defendant also automatically joined the VERANNE Executive Board.

51. Defendant has abused his position on the VERANNE Executive Board to induce VERANNE to cause additional harm to Plaintiff.

52. In addition to suspending Plaintiff from his position as the director of the CEP program, VERANNE has also ceased all communications with Plaintiff; instructed CEP employees to not contact Plaintiff; and blocked Plaintiff from accessing his research grants managed by VERANNE.

53. Despite effectively shutting Plaintiff out from any involvement with VERANNE, VERANNE continues to use Plaintiff's name to invoice the VA Office of Rural Health, VA Office of Research and Development, and the FDA for research monies.

54. On information and belief, all of these actions were induced and facilitated by Defendant for the purpose of causing harm to Plaintiff, and not to further any legitimate interests of Defendant or VERANNE.

55. On February 7, 2023, Defendant refused to extend Plaintiff's employment at WRJ VAMC, despite Plaintiff having another year remaining on his contract with the VA.

56. On February 8, 2023, Defendant convened a meeting of the WRJ VAMC Research and Development Committee and did not invite Plaintiff.

57. Plaintiff was the longest serving, only Asian, and only minority member of this committee.

58. Historically, every "without compensation" research analyst Defendant has terminated has been Asian.

59. On February 9, 2023, Defendant convened a meeting of the WRJ VAMC research staff and told staff to call campus police if they saw Plaintiff on the grounds.

60. In this and subsequent meetings, Defendant characterized Plaintiff as "hostile".

61. Plaintiff was not invited to or informed of this meeting.

62. Plaintiff was not told why he was not allowed on WRJ VAMC grounds.

63. In fact, Plaintiff was never served with a "no-trespass" notice or otherwise even informed that he was not allowed to be on the grounds.

64. Plaintiff only learned of Defendant's instruction when a member of the research staff told him.

65. Upon learning that Defendant had instructed the research staff to report Plaintiff's presence to VA police, Plaintiff attempted to contact local VA leadership and HR for an explanation.

66. Plaintiff received no response.

67. On February 15, 2023, Plaintiff reported the incident through the Disruptive Behavior Reporting System.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

68. Following his report, Plaintiff sent an email with the subject line "VA supervisor instructs staff to call cops on minority colleague" to several local VA officials, including Ryan Lilly, Director of the VA New England Health Care System, and Becky Rhoads, acting Executive Director at WRJ VAMC and Defendant's direct supervisor.

69. In the email, Plaintiff informed the officials of his incident report, and expressed fear for his safety in the wake of Defendant's instructions to the research staff.

70. On February 16, 2023, Plaintiff received a response thanking him for passing along the information and stating that his concerns would be reviewed.

71. An hour later, Plaintiff replied, under the same "VA supervisor instructs staff to call cops on minority colleague" subject line.

72. Plaintiff thanked the officials for their concern, stated that he was "heading to work shortly" and that he "hop[ed] you don't see me on the evening news."

73. In the context of the conversation and the subject line, Plaintiff's comment was plainly an expression of fear made against the backdrop of recent, highly publicized incidents of police violence against minorities and Defendant's false assertion that Plaintiff was "hostile."

74. Bafflingly, Plaintiff's expression of concern for his own personal safety was instead treated as a threat against the WRJ VAMC.

75. VA police were notified of his message, and active shooter protocols were engaged at WRJ VAMC, with the entire research building being locked down.

76. After the lockdown was lifted, Plaintiff's picture was publicly posted in the lobby of the research building.

77. On information and belief, all of this was induced and facilitated by Defendant.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

78. Due to his concerns about his safety, Plaintiff decided to work from home that day and did not go to campus.

79. Consequently, he was unaware that he had been falsely and publicly implicated as an "active shooter" with his picture posted in the lobby.

80. Had Plaintiff attempted to go to work, there is a significant likelihood that he would have been apprehended or even killed upon entering the WRJ VAMC campus.

81. That same day, Defendant unilaterally revoked Plaintiff's access to his VA email and research folders.

82. Defendant also instructed the Research & Development Committee to strip Plaintiff of all his research projects.

83. In the afternoon on February 16, 2023, Plaintiff received an authorized absence notice from Becky Rhoads.

84. The authorized absence notice was issued based on "alleged possible misconduct," with no further explanation.

85. In the face of the impending end of his position and wishing to leave behind the severe and pervasive hostile environment Defendant fomented at WRJ VAMC, Plaintiff secured a new position as lead biostatistician for the VA Center for Medication Safety.

86. In connection with the new position, Plaintiff requested a direct transfer, a standard protocol for VA employees that allows them to avoid any lapses in benefits or service when changing jobs within the department.

87. Defendant denied Plaintiff's request with no justification, leaving Plaintiff without benefits until he can start his new job and a gap in his government service record.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

88. On March 28, 2023, Defendant sent an email to Clinical Epidemiology Program Team Members, without including Plaintiff, in which he stated that "Dr. Young-Xu is no longer an employee of the White River Junction VA Medical Center. All studies overseen by the White River Junction VA Medical Center where Dr. Young-Xu was principal investigator were put on hold in February 2023 and his access to study data was revoked. As you know, some of the studies are being re-opened with other principal investigators and others will continue to be on hold. Please note that Dr. Young-Xu is not approved to access data for any study overseen by the White River Junction VA Medical Center Research and Development Committee."

89. Defendant's March 28, 2023 email was intended to and did defame and disparage Plaintiff and cast him in a false light by falsely implying that he had engaged in some serious personal or professional misconduct, and/or reflects a reckless disregard for Plaintiff's rights and interests.

90. Defendant's March 28, 2023 email served no legitimate interests or purposes of Defendant, the WRJ VAMC, or the Clinical Epidemiology Program Team, but was intended to, and did, cause severe and lasting harm to Plaintiff.

91. As a direct and proximate result of Defendant's acts and omissions as alleged above, Plaintiff has sustained losses and injuries for which he is entitled to recover damages, including:

a. Lost past and future earnings;

b. Lost employment opportunities;

c. Legal expenses and attorneys' fees;

d. Other out-of-pocket expenses;

e. Injury to personal and professional reputation; and

  f. Severe emotional distress.

  92. Defendant's actions were wanton, willful, malicious, reprehensible, and outrageous, and were undertaken with the specific intention of causing severe harm to Plaintiff and/or with a reckless disregard for Plaintiff's rights and interests.

## COUNT ONE – TORTIOUS INTERFERENCE

  93. The foregoing paragraphs are incorporated by reference.

  94. By the foregoing conduct, Defendant intentionally interfered with Plaintiff's existing and prospective contractual relations.

  95. Defendant had actual knowledge of the contractual relations with which he interfered.

  96. Defendant's interference was willful.

  97. Defendant's interference was accomplished by wrongful means.

  98. Defendant's interference was not privileged.

  99. Defendant's interference was motivated by actual malice.

  100. As a direct and proximate consequence of Defendant's interference, Plaintiff suffered severe, lasting and permanent harm to his present and prospective contractual relations.

  101. As a direct and proximate consequence of Defendant's interference, Plaintiff has sustained a loss of employment and employment opportunities, a loss of income, harm to his professional reputation, out-of-pocket expenses, and severe and continuing mental and emotional distress, for which he is entitled to recover monetary damages from Defendant.

  102. Defendant's interference was wanton, willful, outrageous, malicious, and utterly reprehensible, such that Plaintiff is entitled to recover punitive damages from Defendant.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

## COUNT TWO – DEFAMATION

103. The foregoing paragraphs are incorporated by reference.

104. Defendant made false and defamatory statements about Plaintiff, including that he was "implicated" in a workplace investigation of complaints asserted by Defendant's former paramour, which Defendant knew to be groundless, without disclosing Defendant's conflict of interest arising out of his personal romantic relationship with the complainant, and assertions that Plaintiff was "hostile" such that he should not allowed on WRJ VAMC grounds.

105. Defendant knew these statements were false and/or misleading and made them with malicious intent.

106. Defendant made these statements to multiple third parties, including members of WRJ VAMC research staff.

107. Defendant's defamation of Plaintiff was not privileged.

108. As a direct and proximate consequence of Defendant's defamation, Plaintiff suffered a loss of employment and employment opportunities, a loss of income, harm to his professional reputation, out-of-pocket expenses, and severe and continuing mental and emotional distress, for which he is entitled to recover monetary damages from Defendant.

109. Defendant's defamation was wanton, willful, outrageous, malicious, and utterly reprehensible, such that Plaintiff is entitled to recover punitive damages from Defendant.

## COUNT THREE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. The foregoing paragraphs are incorporated by reference.

111. Defendant's actions were extreme and outrageous and an abuse of Defendant's authority.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

112. Defendant's actions were intended to cause and/or were done with reckless disregard for the probability of causing Plaintiff to suffer emotional distress.

113. As a direct and proximate consequence of Defendant's actions, Plaintiff has suffered and continues to suffer extreme emotional distress for which he is entitled to recover compensatory damages from Defendant.

114. Defendant's infliction of emotion distress was wanton, willful, outrageous, malicious, and utterly reprehensible, such that Plaintiff is entitled to recover punitive damages from Defendant.

## **COUNT FOUR – VERMONT FAIR EMPLOYMENT PRACTICES ACT**

115. The foregoing paragraphs are incorporated by reference.

116. The Vermont Fair Employment Practices Act, codified at 21 V.S.A. §§ 495-496a, sets forth rules for employers designed to prevent discrimination, retaliation, and other negative actions against employees.

117. In relevant part, 21 V.S.A. § 495 proscribes employers from discriminating against any individual because of race, color, ancestry, national origin, or place of birth.

118. In relevant part, an "employer" means "any individual, organization or governmental body . . . and any agent of such employer, that has one or more individuals performing services for it within this State." 21 V.S.A. § 495d(1).

119. Defendant is an agent of WRJ VAMC, an organization/governmental body located in Vermont with one or more individuals performing services for it.

120. Defendant discriminated against Plaintiff in his capacity as an agent of WRJ VAMC on the basis of his race and/or ethnicity and/or national origin, by excluding him from meetings of a committee where he was the only minority member; baselessly characterizing

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

Plaintiff as hostile and instructing research staff to report Plaintiff to the police if he came onto campus; unilaterally stripping Plaintiff of lucrative research projects; and refusing to extend Plaintiff's position at WRJ VAMC through the end of his contract or allow Plaintiff to directly transfer to a different institution.

121. Defendant also retaliated against Plaintiff for reporting Defendant's discriminatory and retaliatory conduct.

122. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered a loss of employment and employment opportunities, a loss of income, harm to his professional reputation, out-of-pocket expenses, and severe and continuing mental and emotional distress, for which he is entitled to recover monetary damages from Defendant.

123. Defendant is liable to Plaintiff for damages, punitive damages, costs, reasonable attorneys' fees, and other appropriate relief, pursuant to 21 V.S.A. § 495b.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendant, and requests the following relief:

1. Damages;

2. Punitive damages;

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as appears reasonable, necessary, just and appropriate.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
BURLINGTON, VERMONT

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

DATED at Burlington, Vermont, this 30th day of March, 2023.

        YINONG YOUNG-XU

        BY:  PAUL FRANK + COLLINS P.C.

        By:  */s/ Stephen D. Ellis*
            Stephen D. Ellis, Esq.
            P.O. Box 1307 / One Church Street
            Burlington, VT  05402-1307
            T:  802.658.2311
            F:  802.658.0042
            E:  sellis@pfclaw.com

8818892_1:15223-00001